NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| BILLY JACK RAYBURN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 05-322-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JACK SIZEMORE, Jailer, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Billy Jack Rayburn, an inmate currently confined in the Grayson County Detention Center, has filed a *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. §1983. The named defendants are the following Laurel County Detention Center ("LCDC") officials: Laurel County Jailer Jack Sizemore, Head Nurse Betty McKnight, and Community Corrections Coordinator for the LCDC Halfway House, Frank Gibson. It appears that Rayburn is suing these individuals in both their individual and official capacities.

CLAIMS

Rayburn alleges that Defendants Sizemore and McKnight exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He further alleges that these defendants subjected him to cruel and unusual punishment because of the conditions of his confinement from approximately September 4, 2004, through September 7, 2004. He contends that he was gravely ill during this period. Rayburn also claims that from approximately March 10, 2004, until approximately April 2, 2004, the defendants were deliberately indifferent to his serious security

1

needs in violation of the Eighth and Fourteenth Amendments. Rayburn seeks monetary damages for the alleged violation of his constitutionally-protected rights.

## STATEMENT OF THE CLAIMS

The following is a summary of Rayburn's allegations:

In April 2002, Wally Junie Kirby and Juanita Watkins were indicted for alleged violations of the federal drug laws in this district (London Criminal No. 6:02-58-KKC). More specifically, these defendants were charged with felony offenses of possession of controlled substances (3 counts), conspiracy to manufacture controlled substances (1 count), and conspiracy to manufacture controlled substances (2 counts). Rayburn was also charged with unlawfully manufacturing controlled substances (4 counts), and conspiracy to manufacture controlled substance (1 count). On October 3, 2002, Judge Caldwell sentenced: (1) Defendant Kirby to 121 months' imprisonment; (2) Defendant Watkins to 120 months' imprisonment; and (3) Rayburn to 36 months' imprisonment.

On March 10, 2004, Rayburn was transferred to the LCDC Halfway House in London, Kentucky, to complete the last six months of his federal sentence. (*See* London Criminal No. 04-50-DCR.) On March 10, 2004, Rayburn allegedly informed Defendant Gibson, the LCDC Halfway House Coordinator, that he could not be housed with Charles Kirby, the brother of his co-defendant, Wally Junie Kirby. He states that he explained to Gibson that his federal criminal case had caused a "conflict" with the Kirby family. Gibson allegedly responded by threatening to return Rayburn to prison if he "made trouble." When Rayburn arrived at his cell, Charles Kirby allegedly was there. Charles Kirby allegedly informed Rayburn's cellmates that Rayburn had helped the federal Drug Enforcement Administration ("DEA") convict his brother (Wally Junie Kirby) on federal drug charges. That night, Charles Kirby spit in Rayburn's food. The following day, Rayburn informed

Gibson that he "had trouble" and was "scared." That night, Charles Kirby smacked Rayburn and ordered him to stay on his bed or he "would be sorry." The following day, Rayburn filed a written request with Gibson informing him of these matters. A written account of this situation was also sent to Jailer Jack Sizemore. Charles Kirby was eventually released to home confinement. Nevertheless, Charles Kirby and Rayburn were both assigned to attend the same drug class, during which Charles informed Rayburn to "watch his back" or he would "end up a dead rat."

On April 2, 2004, Rayburn returned to the LCDC halfway house from his work release job at Sonic Restaurant and checked in at the front desk. However, rather than enter the rear of the facility to be admitted to the living quarters, Rayburn disappeared. Approximately five months later, in September 2004, Rayburn was arrested in Kodak, Tennessee.

Rayburn was returned to the Laure County Detention Center on September 4, 2004. Also on that date, he informed LCDC Head Nurse Betty McKnight that he could not urinate, that he was passing blood, and that he was experiencing such severe pain that he could not walk. Rayburn claims he also sent a "letter" regarding this matter to Nurse McKnight. He complains that, despite his complaints of pain, he was required to walk to the nurses' station where he again spoke to Nurse McKnight and requested medical attention from a doctor. Rayburn explained that he had a kidney stone which was manifesting itself with uncontrollable bleeding, pain, swollen testicles, vomiting, an inability to urinate and/or uncontrollable urination. McKnight allegedly prescribed Tylenol and advised Rayburn to drink water. However, Rayburn claims the water faucet in his cell was inoperable. Rayburn allegedly sent McNight a second letter complaining of these conditions.

The following day (September 5, 2004), Rayburn was placed in segregation for threatening to report these matters to his attorney and for threatening to sue McKnight. McKnight allegedly told

Rayburn that he would remain in segregation until he left LCDC. While in segregation, Rayburn claims that he was naked but for a "ripped paper gown." He also asserts that he did not have a mattress, pillow, or sheet. He alleges that he was required to sleep on a bare concrete floor. While in segregation, Rayburn also claims that his urine stopped, his testicles turned blue, his testicles became swollen to three times their normal size, he repeatedly vomited, and he continued to experience intense pain.

On September 5, 2004, the plaintiff asserts that he spoke with Jailer Jack Sizemore. Sizemore allegedly told Rayburn that he made Sizemore "look bad" when he left his community work release job and went on escape status from his halfway house placement. Rayburn contends that he apologized to Sizemore in an effort to curry favor with him and in an attempt to convince Sizemore of his need for medical attention.

By September 6, 2004, Rayburn claims that his hips were bruised. Although he was prescribed Benadryl, he alleges that he remained unable to urinate (and had gone four days with "only dripping blood"). Rayburn asserts that he kicked his cell door in an effort to garner attention and did so despite having been warned by Sizemore that if he continued he would "be sorry." In response, Rayburn contends that he was pepper-sprayed in the eyes through the food slot of the segregation cell door. He alleges that he used toilet water to flush the pepper spray from his eyes.

Rayburn claims that on September 7, 2004, a minister stopped at his cell and was advised of his situation. After engaging in prayer, Rayburn states that he heard a United States Marshal in the hallway. As a result, Rayburn contends that he started kicked the door and screamed for the marshal to help him. After the Marshal responded, Rayburn states that he explained his situation and was moved to the Pulaski County Detention Center. While incarcerated in Pulaski County, Rayburn was

allegedly discovered to have a severe kidney infection. While at that location, a nurse administered and arranged treatment by a urologist (Dr. Ruby). Rayburn also claims that he underwent surgery for kidney stones and received treatment for a "massive" testicular infection. He also claims that he still experiences testicle and kidney pain but that he is able to pass urine with only some blood in it.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), *et seq.*, a plaintiff is required to exhaust "all available" administrative remedies prior to filing suit. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 532 (2003); *Boyd v. Corrections Corporation of America*, 380 F.3d 989, 994 (6th Cir. 2004); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).[1] Ordinarily, an action must be dismissed pursuant to 42 U.S.C. §1997e(c)(1) and/or 42 U.S.C. §1997e(a) when the plaintiff has failed to establish that he has exhausted administrative remedies, mandatory in nature, that were in place and/or for the plaintiff having failed to plead with specificity the administrative proceedings and their outcomes.

In *Perkins v. Obey*, 2005 WL 433580 (S.D.N.Y.), the court discussed the Second Circuit's recent decision in *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004), regarding the three-part test used to determine whether the PLRA's exhaustion requirement had been satisfied. The court wrote:

---

[1] Recently, the Court has had the opportunity to examine the exhaustion of administrative remedies requirement in the context of the Laurel County Detention Center. *See Glenn S. Baker v. Joey Andes, et al.*, London Civil Action 6: 04-343-DCR, and *Tony Martin v. Jack Sizemore*, London Civil Action 05-105-KKC. According to information filed in the *Baker* case, the LCDC reportedly has an Inmate Orientation Manual and, pursuant to LCDC policy, a copy would have been given to Rayburn upon his arrival at the LCDC. *Baker v. Andes, et al.*, London Civil Action 04-cv-343, Affidavit of Jailer Jack Sizemore; *Baker v. Andes, et al.*, London Civil Action No. 04-cv-343, (*See* Record No. 24, attachment 4, p. 7.)

> In *Hemphill*, the Circuit held that "where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies, "a three-part test must be applied. 380 F.3d at 686. First, "[d]epending on the inmate's explanation for the alleged failure to exhaust," the court must determine whether administrative remedies were "available" to the prisoner. *Id.* (citing *Abney*, 380 F.3d at 663). Second, the court must ask whether the defendants "forfeited the affirmative defense of exhaustion by failing to raise it," or are estopped from raising the defense by their own actions inhibiting the plaintiff's access to available administrative remedies. *Id.* (citing *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ziemba*, 366 F.3d at 163). And, third, where administrative remedies were available and the defendants neither waived the non-exhaustion defense nor are estopped from asserting it, "the court should consider whether 'special circumstances' have been plausibly alleged that 'justify the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (citing *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Rodriguez v. Westchester County Jail Correctional Department*, 372 F.3d 485, 487 (2d Cir. 2004)).

*Perkins v. Obey,* 2005 WL 433580, *4 (S.D.N.Y.). Thus, the issues of "availability," "estoppel," and "special circumstances" must be addressed in determining whether this action may proceed.

### I. "AVAILABLITY"

The first question to consider when addressing whether a prisoner has sufficiently exhausted his administrative remedies is whether PLRA remedies were "available" to the prisoner. It has previously been claimed that the alleged grievance procedure set forth in the "Complaints" section of the Laurel County Detention Center's "Inmate Orientation Manual" is mandatory and, therefore, is a PLRA-compliant available administrative remedy. The Laurel County Detention Center "Inmate Orientation Manual"[2] merely states:

> COMPLAINTS: Any inmate who wishes to file a grievance may obtain forms from any deputy. Fill it out; seal it and send to the front office. Legitimate complaints will be answered.

---

2   The Court is speculating that the Inmate Orientation Manual in effect at the time of Rayburn's arrival at the LCDC was the same Inmate Orientation Manual in effect at the time of Plaintiff Baker's arrival at the LCDC in the previously-referenced litigation.

6

*See Baker v. Andes, et al.*, London Civil No. 04-343, Record No. 24, Attachment 4, p. 7. This LCDC "Complaints" policy is not a PLRA-compliant administrative remedy because: (1) it is not mandatory in that it merely suggests that an inmate "may" file a grievance which implies that filing a paper complaint is optional, that an inmate grievance by alternative means is permissible, and that there is no necessity for filing any grievances; (2) it is not exclusive in that it does not indicate that it provides the sole method an inmate may utilize in registering a grievance; (3) it makes no reference to the PLRA; (4) it does not state that a grievance is mandatory for any purposes; (5) it is misleading in that it is entitled "Complaints" as opposed to "Grievance" or "Administrative Remedy." In summary, because the LCDC "Complaints" policy is not a PLRA-compliant mandatory exhaustion requirement, PLRA administrative remedies were not "available" to Rayburn. Therefore, the Court will not dismiss Rayburn's complaint at this stage of the proceedings for failure to exhaust his administrative remedies.

## II. ESTOPPEL

The defendants may be estopped from asserting the affirmative defense of failure to exhaust administrative remedies if their own actions inhibited Rayburn's access to administrative remedies. *Perkins v. Obey*, 2005 WL 433580, *4 (S.D.N.Y.). Thus, estoppel may be applicable under the facts alleged in the present action.

## III. "SPECIAL CIRCUMSTANCES"

Based upon factual claims made by the plaintiff, it appears that this case also presents sufficient "special circumstances" to warrant waiver of any exhaustion requirements. Consequently, absent further pleadings establishing that this case must be dismissed for failure to exhaust

administrative remedies, at this juncture, the exhaustion of administrative remedies requirement will not bar the plaintiff's action.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED** as follows:

(1) The defendants named in this action are the following Laurel County Detention Center ("LCDC") officials: Jailer Jack Sizemore, Head Nurse Betty McKnight, and Frank Gibson, Community Corrections Coordinator for the LCDC Halfway House in London, Kentucky.

(2) The Clerk in the divisional office in which the case lies shall prepare and issue summonses for Jack Sizemore, Betty McKnight, and Frank Gibson, in their individual and official capacities.

(3) The Clerk shall also prepare as many copies of the complaint as there are summonses and any required USM Forms 285. If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make an entry on the docket stating why the Clerk cannot fill-out the summons or USM Form 285 or any other documents necessary to effectuate service.

(4) After the Clerk's office has prepared the summonses, USM Forms 285, complaint copies, a copy of this Order, and/or any other documents necessary to effectuate service, the Clerk office shall forward said documents, by certified mail, to the United States Marshal's office in Lexington, Kentucky. The Clerk shall enter the certified mail receipt into the record.

(5) The United States Marshal shall serve a summons, complaint copy, and copy of this Order on each named defendant and shall do so by certified mail, return receipt requested.

(6)   The United States Marshal shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(7)   The plaintiff shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(8)   For every further pleading or other document he wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel. If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

(9)   The Clerk is directed to serve a copy of this Order upon the Jailer/Warden of the institution in which the prisoner is currently confined; upon the Office of General Counsel for the Kentucky Department of Corrections in Frankfort, Kentucky; upon the Laurel County Judge Executive; and upon the members of the Fiscal Court of Laurel County.

This 6th day of July, 2005.



**Signed By:**
*Danny C. Reeves*  DCR
**United States District Judge**